[L. A. No. 19454. In Bank. Nov. 27, 1945.]

M. E. PEWITT, Respondent, v. FOSTER RILEY et al., Appellants.

Gibson, Dunn & Crutcher and Phillip C. Sterry for Appellants.

Charles X. Arnold and Edgar T. Fee for Respondent.

SCHAUER, J.—Defendants appeal from a judgment rendered by the court, sitting without a jury, in favor of plaintiff and cross-defendant in his action against defendants for property damages resulting from the collision of plaintiff's tractor and trailer, which he was operating, with a truck and trailer owned by defendant Riley and operated by defendant Gay. Each of the opposing parties charges that the negligence of the adversary operator was the sole proximate cause of the accident. The issue before us is whether the evidence is sufficient to sustain the findings ''that the said accident was the direct and proximate result of the negligent actions of

defendant Henry Gay'' and that ''it is not true that there was any negligence on the part of the plaintiff contributing proximately to the said accident.'' After reviewing the record we have concluded that such findings are supported by the evidence and that the judgment must be affirmed.

Viewing the evidence in the light most favorable to the plaintiff-respondent, resolving all conflicts and indulging all legitimate and reasonable inferences to uphold the findings of the trial court, as is our duty (see *Estate of Bristol* (1943), 23 Cal.2d 221, 223 [143 P.2d 689]), the record discloses that the time and place of the collision and the events which immediately preceded it are as follows:

The accident occurred on July 22, 1943, at about 2:25 in the morning, on a portion of Highway 99 commonly known as the Ridge Route, and at a point thereon about five miles south of Gorman and opposite a filling station known as the Lemon. At the point of the collision Highway 99 is a paved three-lane roadway running north and south, with a slight down grade to the south, with clearly marked traffic lanes, and with a hard surfaced shoulder on each side. In a northerly direction from the Lemon, which is located on the east side of the highway, the road is straight for about 300 yards; it then curves about 20 degrees to the west.

Defendant Gay (hereinafter referred to as the defendant) was driving south a truck and trailer of an overall length of 40 to 45 feet, loaded with baled hay. Opposite the Lemon he parked his equipment on the right hand, or west, shoulder of the highway and walked across the road to the filling station in order to request the driver of another truck to move his vehicle so that defendant could drive up to the gas pumps in the station. Defendant then returned to his truck, and started to turn into and across the highway. Plaintiff, driving his tractor and trailer south, struck the left side of defendant's equipment at the rear of defendant's truck and the front of the trailer. Defendant testified that after he returned from the filling station he waited, while standing on the ''bumper'' of his truck, for two south-bound cars to pass before he commenced to drive across the highway; that after starting his truck moving he did not pull ahead first but immediately began his turn across the highway and looked to the south but did not again look to the north and did not see plaintiff coming from the north until he, defendant,

reached the center of the highway; and that he was then traveling approximately four miles per hour and "gave it a little more gas" in an attempt to "go on across out of" plaintiff's way, but failed to avoid the collision.

Plaintiff testified that defendant's truck was not moving when he first saw it 300 yards away as he drove south around the curve at 35 miles per hour; that he blinked his lights and "determined to go on by" defendant; that when plaintiff was still 250 yards away defendant's truck started to move south and a little toward the center of the highway; that plaintiff then slowed his speed to about 30 miles per hour and again blinked his lights but did not sound his horn and put "air in my lines so I could stop or slow down"; that he subsequently released the air from his lines and "picked up" two or three miles per hour; that when plaintiff was about 150 feet (at some points in his testimony he said "about 75 yards") away defendant turned directly across the highway in front of him; that he then applied "all of" his brakes but was unable to stop before colliding with defendant's truck and trailer while he, plaintiff, was still traveling approximately 12 to 15 miles per hour; that at the time of the collision defendant's vehicles were extending entirely and squarely across the highway; that defendant did not signal that he intended to turn across the highway; and that plaintiff's brakes had been overhauled approximately 30 days earlier and had been inspected, immediately preceding the accident, "at the top of the hill about 15 miles" north of the point of collision and were in good condition.

■ Defendant first charges that plaintiff's failure to sound his horn as he approached defendant's equipment constituted negligence proximately contributing to the accident. In support of such contention defendant cites sections 597 and 528 of the Vehicle Code, which on the date of the accident read as follows:

Section 597: "The driver of a motor vehicle traveling . . . upon mountain highways . . . upon approaching any curve where the view is obstructed within a distance of two hundred feet along the highway shall give audible warning with the horn of such motor vehicle."

Section 528: "The following rules shall govern the overtaking and passing of vehicles proceeding in the same direction, subject to the limitations and exceptions hereinafter

stated: . . . (b) *The driver of a motor vehicle, when traveling outside of a business or residence district and under other conditions where necessary to insure safety, shall give audible warning before overtaking a vehicle proceeding in the same direction. . . ."

The record, however, discloses legally satisfactory answers to both phases of defendant's proposition. In the first place, such record is devoid of evidence that the view around the curve in that section of the highway over which plaintiff had driven before first viewing defendant's equipment was "obstructed within a distance of two hundred feet along the highway" so as to bring plaintiff within the provisions of section 597 of the Vehicle Code. In the second place, it is to be remembered that defendant himself testified that after starting his truck moving he did not pull ahead first but immediately began his turn across the highway; consequently the trial court may well have concluded that plaintiff was not "overtaking a vehicle proceeding in the same direction," within the terms of section 528 of the Vehicle Code as it read on the date of the accident. Plaintiff's testimony that defendant's truck started to move south and a little toward the center of the highway obviously reflects the appearance of the movement to him in the position from which he viewed it and is not conclusive of the actual fact. The trial court must be presumed to have accepted defendant's testimony as being more accurate on this point. ▉ In the third place, even had the evidence indisputably established that plaintiff was approaching a "curve where the view is obstructed within a distance of 200 feet along the highway" (as described in section 597) and was "overtaking a vehicle proceeding in the same direction" (as was provided in section 528), and therefore was by law required to sound his horn, we are nevertheless of the opinion that it could not be held as a matter of law upon the record here that plaintiff's failure to so sound his horn was a proximately contributing cause of the accident. Defendant's testimony that after waiting for two cars to pass him while he was still outside the cab of

---

*It may be noted that by amendment effective August 4, 1943, the Legislature removed the above quoted subdivision (b) of section 528, leaving in effect concerning the use of horns only the quoted provisions of section 597 and the provisions of subdivision (b) of section 671 of the Vehicle Code that: "The driver of a motor vehicle when reasonably necessary to insure safe operation shall give audible warning with his horn. Such horn shall not otherwise be used."

his truck, he entered the cab and did not again look to the north before starting his truck and immediately turning across the highway and that he did not see plaintiff approaching from the north until he, defendant, had reached the center of the highway, coupled with plaintiff's testimony that he (plaintiff) twice blinked his lights, would warrant the trial court in concluding that defendant was inattentive to a degree that he would not have heard or heeded an audible warning had it been given. Under such circumstances we must, in support of the finding that "it is not true that there was any negligence on the part of the plaintiff contributing proximately to the said accident" presume that the court did so conclude. ■ The applicable principles are those recently summarized by this court in *Anthony* v. *Hobbie* (1945), 25 Cal.2d 814, 818 [155 P.2d 826], as follows: "But cases in which it can be said that the negligence of plaintiff contributes proximately to the accident as a matter of law are rare. The rule has been stated in various ways in a legion of cases, that contributory negligence is not established as a matter of law unless the only reasonable hypothesis is that such negligence exists; that reasonable or sensible men could have drawn that conclusion and none other; that where there are different inferences that may be drawn, one for and one against, the one against will be followed; and that before it can be held as a matter of law that contributory negligence exists, the evidence must point unerringly to that conclusion." (See, also, *Kirk* v. *Los Angeles Ry. Corp.* (1945), 26 Cal.2d 833, 838 [161 P.2d 673].)

The cases of *Moore* v. *Miller* (1942), 51 Cal.App.2d 674 [125 P.2d 576], and *Cadwell* v. *Anschutz* (1935), 4 Cal.2d 709 [52 P.2d 916], relied upon by defendant are not controlling. In the Moore case upon the same principle which must govern our decision here—that in the absence of prejudicial error under the circumstances shown the judgment must be upheld if the evidence supports the verdict, or the findings of the trial court—a judgment in favor of defendant was affirmed. The application of the overtaking rule in that case was grounded upon the facts there established; i. e., a showing not as a matter of law insufficient to sustain the implied finding that the vehicles were "proceeding substantially in the same direction." The evidence here does not as a matter of law require the finding which was essential there. ■ *Cadwell* v. *Anschutz* (1935), *supra,* is clearly

an overtaking case. The facts therein presented are substantially different from those now before us in that the earlier case depicts a much stronger showing of contributory negligence of the plaintiff. However, it must be considered as overruled insofar as it may purport to weigh the evidence (to determine, contrary to the trial court, on conflicting inferences that a certain conclusion was ''reasonably probable'') rather than to determine the legal sufficiency thereof to support the verdict, or otherwise may appear to conflict with our decision herein.

Defendant next urges that certain of the evidence establishes that plaintiff was exceeding the 35 mile-per-hour speed at which he testified he was traveling as he came around the curve and first saw defendant, and that plaintiff was contributively negligent in releasing the air from his brakes when he was 750 feet from defendant and after defendant's equipment had started moving. So far as concerns the speed of plaintiff's equipment and its distance from defendant's vehicles when the latter started to move, the evidence to which defendant refers merely establishes a conflict on the point, which was resolved by the trial court in plaintiff's favor. Plaintiff testified directly that his speed was 35 miles an hour as he came around the curve and that he slowed to 30. From defendant's testimony that he began his turn across the road immediately upon starting his truck, coupled with plaintiff's testimony that he was about 150 feet away when defendant turned across such road, the court could have concluded that the distance separating the vehicles when defendant started to move was far less than plaintiff's estimate.

Defendant's arguments concerning plaintiff's failure sooner to apply his brakes likewise bring up questions of conflicting evidentiary inferences which we are bound to presume the trial court determined in favor of plaintiff.

Section 543 of the Vehicle Code requires that ''No person shall start a vehicle stopped, standing or parked on a highway . . . unless and until such movement can be made with reasonable safety,'' and section 544 of the same code provides in part that ''No person shall turn a vehicle unless and until such movement can be made with reasonable safety and then only after the giving of an appropriate signal . . . in the event any other vehicle may be affected by such movement.'' Plaintiff here was not required to anticipate that

defendant in disregard of the requirements of the code sections would drive his equipment directly across the highway in front of plaintiff without first giving adequate warning of his intention so to do. ■ Under such circumstances the issue of whether plaintiff negligently contributed proximately to the collision by his failure to slow his equipment before defendant turned into and across the highway was also for the trial court to determine and we may not interfere with its decision in plaintiff's favor.

■ Defendant seems to rely to some extent also upon an asserted violation by plaintiff of the terms of section 670 of the Vehicle Code as establishing contributory negligence by plaintiff. So far as here material that section provides that ''No person shall operate on any highway any motor vehicle or combination of motor vehicle and other vehicle . . . of a type subject to registration hereunder unless such motor vehicle or at least one unit of any such combination . . . is equipped with brakes adequate to bring such motor vehicle or combination . . . to a complete stop [within a distance of 113 feet] when operated [at a speed of 35 miles per hour] upon dry asphalt or concrete pavement surface where the grade does not exceed one per cent. . . .'' As stated hereinabove, plaintiff testified that he was traveling at a speed of about 30 to 35 miles per hour and was approximately 150 feet from defendant when the latter turned directly across the highway in front of plaintiff, and that he, plaintiff, immediately applied his brakes but was unable to stop in time to avoid colliding with defendant's equipment. However, the only evidence in the record as to the grade of the highway at the site of the collision was testimony that there was a ''slight down grade'' to the south. Whether this was more than one per cent we do not know. Manifestly, also, the distances given by the witness were approximations or estimates. Under such circumstances defendant has failed to establish that as a matter of law plaintiff came within the quoted statute.

■ Lastly, defendant asserts that he himself was guilty of no negligence proximately contributing to the accident. However, from his testimony that he turned his equipment into and across the highway directly in front of plaintiff's approaching tractor and trailer without signaling his intention so to do, as provided by section 544 of the Vehicle Code, and without, as required by section 543, first ascertain-

ing that such movement could be made with reasonable safety, and that he did not even see plaintiff until he, defendant, had reached the center of the highway, it is obvious that the trial court was warranted in its finding that defendant was negligent and, in the light of all the circumstances shown, that his negligence was the proximate cause of the collision.

For the reasons above stated, the judgment is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Spence, J., concurred.